IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA**,

      Plaintiff,

vs.                                                                                                  Criminal No. 23-464-WJ

**DAVID MICHAEL BAUER**,

      Defendant.

**MEMORANDUM OPINION AND ORDER
DENYING DEFENDANT'S SEVENTH MOTION
TO CONTINUE TRIAL**

**THIS MATTER** is before the Court upon Defendant David Michael Bauer's Opposed[1] Motion to Continue Trial (**Doc. 87**). The motion is not well-taken and is therefore **DENIED**.

**BACKGROUND**

The Court summarizes the procedural history of this case by quoting from a previous Memorandum Opinion and Order (**Doc. 63**):

> This case began with the filing of an Indictment on April 11, 2023. Trial was first set for July 3, 2023 . . . . On June 30, 2023, defense counsel filed an unopposed motion to vacate the trial setting. That request was granted and trial was reset for November 6, 2023. Then, on October 26, 2023, defense counsel filed a second unopposed motion to continue. That motion was also granted and trial was reset for February 5, 2024. On February 2, 2024, defense counsel filed a third unopposed motion to continue. The Court granted that request and set trial for May 6, 2024. On May 2, 2024, defense counsel filed a fourth unopposed motion to continue. The Court once again granted this request and reset trial for August 5, 2024 . . . . Finally (or so the Court thought), on July 30, 2024, defense counsel filed a fifth unopposed motion to continue. In that motion, defense counsel stated, "the logistics of scheduling a definite trial setting and housing Mr. Bauer during trial" meant a "scheduling conference would be prudent." Thus, instead of granting and resetting trial, the Court "set a telephonic scheduling conference to establish a firm trial setting . . . ."

---

[1] The United States filed a Response (**Doc. 90**) in opposition.

> On August 15, 2024, the Court held a scheduling conference . . . . The Marshals explained that transporting Bauer for trial in Albuquerque was doable . . . . As such, the Court entered an Order on August 16, 2024, stating that "the above-entitled action is hereby set for a firm **JURY SELECTION/TRIAL ON JANUARY 13, 2025**."

**Doc. 63 at 1–2** (citations omitted). Defense counsel then filed a Motion for Reconsideration (**Doc. 67**), which the Court heard oral argument on during the pretrial conference. *See* **Doc. 72**. Ultimately, the Court found Defendant Bauer justified his need for a continuance, but "only as to Count 3 of the Indictment (carjacking)." **Doc. 73 at 1**. Given the parties' representations, the Court reset the trial for March 31, 2025. *See* **Docs. 72 & 73**.

The Court assumed the onslaught of motions to continue was over. But apparently not.

## DISCUSSION

On February 20, 2025, defense counsel indicated everything was "on track for trial." **Doc. 80 at ¶ 2**. Now, a few weeks later, counsel is requesting a seventh continuance. *See* **Doc. 87**.

Understandably, the United States is frustrated. *See* **Doc. 90**. As stated in the Response, "Despite a definite setting by the Court and defense counsel's assurance that the defendant would be ready for trial, the defendant now seeks a seventh (7th) continuance with less than a month before trial." *Id.* **at 1**. The United States asks the Court to deny the continuance. *Id.*

\* \* \*

Before granting or denying a motion to continue, the Court must evaluate: "(1) the diligence of the party seeking the continuance; (2) the likelihood the continuance, if granted, would have accomplished the stated purpose; (3) the inconvenience to the opposing party, witnesses, and the court; and (4) the need for the continuance and any harm resulting from its denial." *United*

*States v. Cervantes*, 4 F.4th 1089, 1093–94 (10th Cir. 2021). None of these factors[2] favor a continuance.

## I. Bauer Has Not Acted Diligently

Defendant Bauer, through counsel, has not acted diligently in seeking this continuance. This trial has been repeatedly set, continued, and reset. *See United States v. Hannaford*, 2024 U.S. App. LEXIS 16262, at *4–5 (10th Cir. July 3, 2024) (unpublished) (concluding the granting of "four previous continuances" weighs against a finding of diligence). To date, defense counsel has requested seven continuances. *See* **Docs. 19, 23, 25, 29, 31, 61, 87**. This latest request (**Doc. 87**) comes after the Court docketed a "firm" trial setting—one that is less than a month away. *See* **Doc. 73**. This is the second such occurrence. *See* **Doc. 61**.

\* \* \*

Without going too far astray in discovery matters, the Court briefly comments on defense's complaint that Defendant Bauer's medical records "from right after [his] arrest" were not "provided." *See* **Doc. 87 at ¶ 9**. The Court is not sure why any such documents would be in the United States' case file—let alone be turned over—in the first instance. Defendant Bauer's medical records are not evidence. They are, from the United States' perspective, proof of nothing. *See* Fed. R. Crim. P. 16(a) & 26.2.[3]

---

[2] These continuance factors are often referred to as the *Rivera* or *Wynne* factors—so-called because of *United States v. Wynne*, 993 F.2d 760, 767 (10th Cir. 1993) and *United States v. Rivera*, 900 F.2d 1462, 1475 (10th Cir. 1990). *See, e.g., United States v. Diaz*, 189 F.3d 1239, 1248 (10th Cir. 1999) ("The third *Wynne* factor . . . ."); *United States v. Orr*, 692 F.3d 1079, 1100 (10th Cir. 2012) (". . . we evaluate the following factors (the '*Rivera* factors') . . . .").

[3] Based on the pleadings, it does not appear the United States is in possession of Defendant Bauer's medical records from Presbyterian. *See* **Doc. 87 at ¶ 13**; **Doc. 90 at 2–3**. That makes sense. His medical records are not a statement. And the medical records—although records—are not his "prior criminal record" which is subject to disclosure. As such, the Federal Rules do not provide any reason for the United States to have obtained—let alone disclosed—these records. *See* Fed. R. Crim. P. 16.

Moreover, Defense counsel has not alleged that these medical records fall into the realm of exculpatory evidence under *Brady* or *Giglio*. Even after taking a "broad view of materiality," the Court is hard-pressed to think of a reason ***why*** the United States would have sought out these records. Justice Manual

3

Nevertheless, it would seem that the most salient medical records for whether Defendant Bauer was able to form the requisite specific intent (**Doc. 67**) would be his medical records from immediately after the charged events. Thus, to the extent defense counsel have been working with Dr. Lundy for months, this should have been noticed well before now. *Compare* **Doc. 87 at ¶¶ 9–15**, *with* **Doc. 90 at 2–3**. On that point, the Court notes that defense counsel was on notice of the whereabouts of Defendant Bauer's medical records since May 2023. *See* **Doc. 90 at 2–3**. Frankly, the medical records from "the day of the incident" (**Doc. 90 at 2**) should have been considered and obtained at some point over Dr. Lundy's seven months working on this case. This oversight weighs against finding counsel acted diligently. *Cf.* **Doc. 90 at 2–3**.

## II. Delay Will Not Accomplish Any Stated Purpose

The stated purpose of this seventh (yes, *seventh*) continuance is to allow more time for "Dr. Lundy's report" to be completed. **Doc. 87 at ¶ 23**; *see also id.* **at ¶¶ 9–22**. According to counsel, "[w]ithout these records, Dr. Lundy cannot finish her report, and without her report, the defense cannot provide constitutionally effective assistance of counsel to Mr. Bauer at a trial." **Doc. 87 at ¶ 14**.

This is not compelling. For starters, this expert was brought to the Court's attention back in July 2024. *See* **Doc. 31 at ¶ 9**. After over seven months, her report is nearly complete—but for "a small batch of medical records." **Doc. 87 at ¶ 9**. Three weeks is sufficient time to obtain, review, and incorporate the records from "one day of treatment." *Id.* **at ¶ 12**.

Plus, at this point, the continuance is predicated on several uncertainties.

---

§§ 9-5.000, et seq. Given that defense wants these records for their expert, the burden fell on defense to identify them.

4

First, can Dr. Lundy obtain these records and timely finish her report? The Court imagines this is doable over the next several weeks. Especially given that counsel have an "in person visit" with Defendant Bauer in the coming days. *See* **Doc. 87 at ¶ 13**.

Second, it is not certain that Dr. Lundy will be permitted to testify. The *Daubert* hearing isn't until March 25, 2025. *See* **Doc. 83**. So, granting a continuance based on a witness who may be excluded is putting the cart before the horse.

Third, Dr. Lundy is only relevant as to Count 3 (Carjacking). That charge, and that charge alone, were the reason trial was continued from January to March. *See* **Doc. 73 at 1** ("[T]he Defendant has by his motion, created a sufficient record to justify granting the motion to continue only as to Count 3 . . . ."). If the Court severed that Count, then the requested continuance premised upon the expert's report does not accomplish anything with respect to Counts 1, 2, and 4.

Any of these are possible outcomes. That means that the requested continuance—at least currently—will not accomplish any stated purpose.

This factor favors denial.

**III. Inconvenience to Opposing Party, Witnesses, and the Court**

For the seventh time in this case's history, defense counsel filed a motion to continue. The United States opposes continuing this "definite [trial] setting" for a "seventh" time "less than a month before trial." **Doc. 90 at 1**.

The United States is prepared for trial. *See* ***id.*** **at 4**. Trial subpoenas have been issued to witnesses and victims. *Id.* And "[a]nother continuance would negate the preparatory work for trial that has been done to date by the United States and impose considerable inconvenience to the United States' witnesses." *Id.* With this in mind, the Court concludes that witnesses, victims,[4] the

---

[4] As the United States pointed out, the victims have relied on this March 2025 trial setting. *See* **Doc. 90 at 4**. In addition to the Speedy Trial Act's guarantee of swift resolution for defendants (and the public), the

5

United States will be inconvenienced by another continuance. *See United States v. McClaflin*, 939 F.3d 1113, 1118 (10th Cir. 2019) (finding the inconvenience to witnesses, victims, and the trial court were all appropriate considerations).

This factor weighs against granting the continuance.

**IV. Denying the Continuance Does Not Harm Bauer**

"[G]ranting a [seventh] continuance causes the Court concern." **Doc. 63 at 8**; *see United States v. Schurrer*, 1998 U.S. App. LEXIS 21009, at *16 (10th Cir. Aug. 26, 1998) (unpublished) (finding a fourth continuance unnecessary); *United States v. Hannaford*, 2024 U.S. App. LEXIS 16262, at *4 (10th Cir. July 3, 2024) (unpublished) (finding no abuse of discretion when the district court denied a fifth motion to continue).

Importantly, the United States raises speedy trial concerns. *See* **Doc. 90 at 1–2**. The fact Defendant Bauer "agrees with this continuance [request]" does not mean the Court can disregard the Speedy Trial Act. *Compare* **Doc. 87 at ¶ 24**, *with* 18 U.S.C. § 3161. As the United States aptly points out, the Court must balance the "ends of justice" as well as "the best interest of . . . the defendant in a speedy trial." **Doc. 90 at 1** (citing *United States v. Williams*, 511 F.3d 1044, 1058 (10th Cir 2007)). The point it well-taken. There comes a point when repeated continuances become harder and harder to square with a criminal defendant's speedy trial rights.[5] *Groppi v. Wisconsin*,

---

Crime Victims' Rights Act also requires "proceedings free from unreasonable delay." 18 U.S.C. § 3771(a)(7); *see also* Paul G. Cassell, *Treating Crime Victims Fairly: Integrating Victims into the Federal Rules of Criminal Procedure*, 2007 UTAH L. REV. 861, 947 (2007) ("Victims have speedy trial rights under the CVRA . . . ."). This consideration also supports denying Defendant Bauer's motion for a seventh continuance.

[5] As the Court has said before, line-drawing is not necessary. *See United States v. Figueroa-Camarillo*, No. 23-cr-946, 2024 U.S. Dist. LEXIS 128122, at *7 n.9 (D.N.M. July 19, 2024); *cf. United States v. Roper*, No. 23-cr-1617, 2024 U.S. Dist. LEXIS 161158, at *14–16 (D.N.M. Sept. 6, 2024). But it's a truism that a fifth or sixth continuance necessarily implicates a Defendant's speedy trial rights more often than the first or second motion to continue.

400 U.S. 505, 510 (1971) ("[C]ontinuances, particularly if they are repeated, work against the important values implicit in the constitutional guarantee of a speedy trial.").

This factor supports denying the seventh continuance request.

* * * * *

The Court cannot make the requisite finding that continuing this matter furthers the ends of justice. *See* 18 U.S.C. § 3161(h)(7)(A). This case was indicted nearly two years ago. Six continuances have been granted. The charges are not "so unusual or so complex" as to warrant further delay. Plus, defense counsel has been working with this expert for over seven months—during which time the so-called "missing" medical records should have been discovered. *See* **Doc. 87 at ¶ 12**. Based on this, the Court finds additional time is not needed. *See United States v. Toombs*, 574 F.3d 1262, 1272 (10th Cir. 2009) (explaining a continuance based on "need[ing] additional time to prepare for trial" alone is insufficient).

## CONCLUSION

The ends of justice continuance should be "rarely used." *United States v. Rushin*, 642 F.3d 1299, 1303 (10th Cir. 2011). Here, denying Defendant Bauer's seventh request for a continuance does not deprive him of "reasonable time necessary for effective preparation, taking into account the exercise of due diligence." 18 U.S.C. § 3161(h)(7)(B)(iv). Nor does this decision result in a miscarriage of justice. *Id.* at § (h)(7)(B)(i)–(ii). Finally, Defendant Bauer's desire for a continuance does not "outweigh the best interest" of his right to a speedy trial. *Id.* at § (h)(7)(A).

**IT IS THEREFORE ORDERED** that the Unopposed Motion to Continue (**Doc. 87**) is **DENIED**.

**IT IS FURTHER ORDERED** that the *Daubert* hearing (and pretrial conference) will take place on March 25, 2025, as scheduled. *See* **Doc. 83**. If Dr. Lundy's report is complete, then the

*Daubert* hearing will proceed in the normal course. If it is not, then the Court may call Dr. Lundy to the stand and inquire about the efforts made over the last seven months to complete this evaluation and report—with a particular emphasis on: (1) what medical records she thought were pertinent, (2) when she learned of the existence of the Presbyterian medical records, and (3) what actions she's taken since the continuance in January.[6]

**IT IS FINALLY ORDERED** that trial will begin as scheduled on March 31, 2025.

/s/
_____
WILLIAM P. JOHNSON
SENIOR UNITED STATES DISTRICT JUDGE

---

[6] Not only can this Court call witnesses, *see United States v. Scott*, 529 F.3d 1290, 1298 (10th Cir. 2008) (citing Fed. R. Evid. 614), but the Court also has the "authority to question witnesses." *United States v. Koerber*, 10 F.4th 1083, 1119 (10th Cir. 2021). Such power is "beyond dispute." *Id.*