IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA**,

        Plaintiff,

vs.                                                                                            No. 23-cr-464-WJ

**DAVID MICHAEL BAUER**,

        Defendant,

### MEMORANDUM OPINION AND ORDER
### DENYING DEFENDANT'S MOTION TO RECONSIDER, in part,
### and RESERVING RULING, in part

**THIS MATTER** is before the Court on Defendant Bauer's Motion for Reconsideration (**Doc. 93**) as to the Court's denial (**Doc. 91**) of his seventh Motion to Continue Trial (**Doc. 87**).[1] Per defense counsel's request, the Court held a hearing on the Motion on March 18, 2025. *See* **Doc. 94**. Having carefully considered the briefs, oral arguments of counsel, and relevant law, the Court **DENIES** Defendant Bauer's Motion for Reconsideration of the Continuance as to Counts 1, 2, and 4. *Cf.* **Doc. 73**. Additionally—and consistent with the Court's oral pronouncement from the bench—the Court **RESERVES RULING** on Defendant Bauer's reconsideration request for a continuance as to Count 3.

### BACKGROUND

Defendant Bauer was indicted in April 2023 (**Doc. 2**). Defense counsel was appointed in May 2023 (**Docs. 10 & 11**). Over the next fourteen months, the Court granted five unopposed motions to continue. *See* **Docs. 19, 23, 25, 29, 31**.

---

[1] The United States filed a Response opposing the Motion for Reconsideration (**Doc. 100**). Defendant Bauer also filed a Reply (**Doc. 102**).

Shortly after the fifth continuance, the Court docketed a telephonic scheduling conference to nail down a firm trial setting. *See* **Doc. 34**. Based on Defendant Bauer's health—and in an effort to minimize any logistical issues—the Court offered to conduct the trial in Las Cruces. *See* **Doc. 37**.[2] Ultimately, counsel agreed to a firm trial setting for January 2025 in Albuquerque. *See* **Docs. 37 & 38**.

As that trial date approached, the United States filed pretrial Motions and Notices (**Docs. 46–51**). The Court issued two Opinions (**Docs. 52 & 53**). The United States also filed an exhibit list, witness list, voir dire, proposed jury instructions, and a second expert notice (**Docs. 54–59**). In between Christmas and New Year's Eve, Defendant Bauer filed a sixth unopposed motion to continue trial (**Doc. 61**). He argued additional evidence and a new expert notice by the United States warranted the continuance. *See id.* **at ¶¶ 11–17**. The Court denied the Motion (**Doc. 63**).

Defendant Bauer then filed a Motion for Reconsideration (**Doc. 67**). At the pretrial conference, the Court heard argument—and ultimately ruled that Defendant Bauer "created a sufficient record to justify granting the motion to continue ***only as to Count 3*** of the Indictment (carjacking)." **Doc. 73 at 1** (emphasis added). Specifically, the Court was swayed by defense counsel's representation that the defense expert, Dr. Lundy,[3] was necessary to "negate Bauer's *mens rea*." *Id.* (quoting **Doc. 67 at 2** (cleaned up)).

Trial was then reset for March 31, 2025. *See* **Doc. 73**. This March 2025 trial date worked for both parties (and the expert). *See* **Doc. 91 at 2** (citing **Docs. 72 & 73**).

Having learned from past experiences, though, the Court ordered the parties to meet and

---

[2] On this point, the Court (in its estimation) has been extremely accommodating. Defendant Bauer has been housed in New Mexico, Texas, and Arizona—due to health issues. Earlier, when Defendant Bauer was being housed in Texas, the Court even offered to conduct the trial in Las Cruces or El Paso. *See* **Doc. 22**.
[3] Dr. Laura Lundy is a board-certified neuropsychologist with a doctoral degree in clinical psychology. She was qualified and permitted to give expert testimony in at least one case in this District. *See United States v. Dashawn Robertson*, No. 17-cr-2949 (D.N.M.).

confer (**Doc. 76**)—and report back if "there are any issues with the defense expert and if trial is still on track to proceed, as scheduled." *Id.* **at 2** (cleaned up). On February 20, 2025, defense counsel indicated everything was "on track for trial" to proceed as scheduled. **Doc. 80 at ¶ 2**. Around the same time, the Court granted (**Doc. 81**) defense counsel's request to appoint a second trial defense counsel (**Doc. 79**).

Come early March, Defendant Bauer requested his seventh continuance (**Doc. 87**), which the United States opposed (**Doc. 90**). Once again, the Court denied Defendant Bauer's Motion. *See* **Doc. 91**. Now, Defendant Bauer—through counsel—seeks reconsideration of the Court's denial of his seventh motion to continue. *See* **Docs. 87, 93, 102**. In so doing, defense argues the continuance is necessary because the expert's testimony will: (1) negate Defendant Bauer's *mens rea*, (2) explain why Defendant Bauer "did and said certain things," and (3) counter the United States' theory about consciousness of guilt. *See* **Doc. 93 at 2**.

\* \* \*

The Court cannot help but notice that the "reason" for the continuance—and the now routine follow-on requests for reconsideration—is becoming a moving target.

First, in the December 2024 Motion to Continue, defense needed a continuance because of things the United States disclosed.

Then, in the follow-on Motion for Reconsideration, defense needed more time because of their expert—an expert who could support Defendant Bauer's "only possible defense" to the carjacking crime. *See* **Doc. 67 at 2–3**.

Now, defense needs more time for their expert for additional reasons. But the above-mentioned second and third reasons for Dr. Lundy's testimony fly in the face of the Court's previous ruling. *See* **Docs. 72 & 73**. The Court was clear at the pretrial conference when ruling

3

from the bench and in the Order to Continue—the *only* reason the January 2025 trial was moved was because of the compelling argument as to negating specific intent through expert testimony.

## DISCUSSION

At that *Daubert* hearing on March 25, 2025, the Court will undertake its gatekeeping function. *See United States v. Nacchio,* 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc) (Holmes, J.). First, the Court will determine whether Dr. Lundy is sufficiently qualified by "knowledge, skill, experience, training, or education" to render an opinion. Fed. R. Evid. 702. Then, if qualified, the Court will determine whether Dr. Lundy's proposed testimony is reliable. *See United States v. Gutierrez de Lopez*, 761 F.3d 1123, 1136 (10th Cir. 2014).

Before permitting Dr. Lundy to testify, the Court must conclude that: (1) she is qualified, and (2) her testimony is reliable and will assist the jury. As mentioned at the hearing on the Motion to Reconsider, the likely issue will be at this second step. What follows are the Court's concerns about the proffered testimony—which bleed into the reasons for denying Defendant Bauer's Motion to Reconsider.

For starters, the recent case of *United States v. Odifu*, 2025 U.S. App. LEXIS 4665 (10th Cir. Feb. 5, 2025) is directly on-point—and cautions against the admission of experts like Dr. Lundy. Essentially, *Odifu* reaffirmed the decades-old case of *United States v. Brown*, 326 F.3d 1143 (10th Cir. 2003). Both cases stand for the following:

- Opinions that "because of his mental condition, Defendant was unable to conform his conduct to the requirements of the law and make correct choices" are inadmissible because such evidence is "more akin to the defense of justification and excuse." *Odifu*, 2025 U.S. App. LEXIS 4665 at *7–8; *Brown*, 326 F.3d at 1148.

- Evidence of a Defendant's "impaired volitional control or inability to reflect on the consequences of his conduct remains inadmissible." *Brown*, 326 F.3d at 1147.

- Admission of defense evidence offered purely to rebut the United States' evidence of specific intent "will be rare." *Odifu*, 2025 U.S. App. LEXIS 4665 at *5; *Brown*, 326 F.3d at 1147.

- There must be a "link" between the specific psychiatric evidence being offered and the *mens rea* at issue in the case. *Odifu*, 2025 U.S. App. LEXIS 4665 at *4; *Brown*, 326 F.3d at 1145–46.

    - In carjacking cases, then, the expert's report must provide an explanation for why the Defendant did not act with the specific intent required by 18 U.S.C. §§ 2119 and 924(c)—namely, intent to cause death or serious bodily harm. *See* **Doc. 217 at 5–7**, *United States v. Odifu*, 21-cr-47 (D. Colo. Oct. 6, 2022) (explaining that the experts' believe "defendant knew it was wrong to hold a gun to another person's head and wrong to steal the truck" which makes it "difficult to discern why the defendant's mental condition interfered with his ability to form the specific intent" required), *aff'd* 2025 U.S. App. LEXIS 4665 at *7 (finding "no explanation for why the Defendant did not act with the specific intent required").

If Dr. Lundy's testimony were to be admitted, it will have to comply with these strictures. After all, a court "must carefully scrutinize proposed psychiatric evidence to determine whether the evidence rests upon a legally acceptable theory for negating intent." *United States v. Barrett*, 797 F.3d 1207, 1217 (10th Cir. 2015) (citation omitted).

* * *

Defense counsel persuaded the Court that Dr. Lundy was relevant to "the carjacking offense, which is a specific intent crime." **Doc. 67 at 3**. That reason, and that reason alone, justified the continuance. *See* **Docs. 72 & 73**. But now, defense counsel asserts Dr. Lundy's testimony is needed for all the Counts due to "other" reasons. Because of this, defense counsel objected to the Court's suggestion of *sua sponte* severing the carjacking Count. The Court cannot fathom how Dr. Lundy would be able to testify and negate intent as to the general intent crimes in Counts 1, 2, and 4. And neither can defense counsel (at least as of a few months ago). *See* **Doc. 67 at 3** (noting psychological evidence cannot "negate an element of the government's case when [a Defendant is] charged with a general intent crime").

To be sure, counsel's December 2024 Motion for Reconsideration did state that Dr. Lundy's testimony "would also be relevant to counter the government's theory that Mr. Bauer's flight from the Waffle House was due to consciousness of guilt." **Doc. 67 at 3**. But even so, the Court disagrees such evidence is helpful to the jury. As always, expert testimony must be helpful to the jury to be admissible. *See United States v. Martinez*, 749 F. App'x 698, 710 (10th Cir. 2018) (unpublished). Here, the proffered testimony about fleeing a crime scene does not deal with matters outside the everyday knowledge of a typical juror. *See United States v. Fredette*, 315 F.3d 1235, 1240 (10th Cir. 2003). Frankly, the jurors can understand Defendant Bauer's alleged flight from the Waffle House may—*or may not*—be evidence of his consciousness of guilt without the "specialized knowledge" of Dr. Lundy. Such simple, common-sense[4] reason fits squarely within

---

[4] *See, e.g., United States v. Sebaggala*, 256 F.3d 59, 66 (1st Cir. 2001) (noting that jurors can understand common sense issues without the aid of expert testimony); *United States v. Grange*, 390 F.3d 746, 750 (2d Cir. 2004) (explaining an expert cannot "tell [the jurors] what inferences to draw" from the evidence); *United States v. Davis*, 690 F.3d 226, 257 (4th Cir. 2012) (affirming exclusion of "proffered [expert] testimony" because it was a matter of "common sense . . . within the jury's understanding") (Agee, J.); *United States v. Tindall*, 449 F. App'x 377, 378 (5th Cir. 2011) (unpublished and per curiam) ("The evaluation of the reliability of the witnesses' identification was within the common sense of the jury and did not require the aid of expert testimony."); *United States v. Henry*, 71 F. App'x 493, 504 (6th Cir. 2003)

the realm of the trier of fact. Whatever assistance would be provided by Dr. Lundy's testimony on this point is of dubious value. The level of reliability of such testimony had not surpassed the quality of a common-sense evaluation which could be performed by the members of a jury.

Now, counsel also assert that Dr. Lundy is necessary to explain why Defendant Bauer to "did and said certain things." **Doc. 93 at 2**. But that is not what was argued previously. *See* **Doc. 61, 67**, **72**. To the extent defense wishes to have Dr. Lundy testify about the credibility of incriminating statements made by Defendant Bauer, that is not admissible. *See United States v. Benally*, 541 F.3d 990, 994 (10th Cir. 2008); *see also United States v. Adams*, 271 F.3d 1236, 1244–45 (10th Cir. 2001). False confession expert testimony is frowned upon—because it encroaches on the jury's vital (and exclusive) function of making such determinations. An expert may not act as a "human lie detector."[5] *United States v. Griffin*, 50 M.J. 278, 284 (C.A.A.F. 1999). And that's exactly what Dr. Lundy would be doing here. The Court will not continue the trial to provide Dr. Lundy with even more time to theorize an excuse or justification for Defendant Bauer's crimes or confession (as those are matters she cannot properly—*i.e.*, scientifically, technically, or experientially—render an expert opinion about).

\* \* \*

---

(unpublished and per curiam) ("expert testimony is not necessary to draw [a] conclusion" based in "common sense"); *United States v. Christian*, 673 F.3d 702, 710 (7th Cir. 2012) ("[A] witness should not be allowed to put an 'expert gloss' on a conclusion that the jurors should draw themselves."); *United States v. Watkins*, 66 F.4th 1179, 1185 (8th Cir. 2023) ("When a layperson juror would be able to make a common sense determination of the issue without the technical aid of such an expert, the expert testimony should be excluded as superfluous.") (Benton, J.); *United States v. Smith*, 122 F.3d 1355, 1358 (11th Cir. 1997) ("Expert testimony is properly excluded when it is not needed to clarify facts and issues of common understanding which jurors are able to comprehend for themselves." (quoting *Salem v. U.S. Lines Co.*, 370 U.S. 31, 35 (1962)).

[5] "Human lie detector evidence is elicited when a witness provides an opinion as to whether [a] person was truthful in making a specific statement regarding a fact at issue in the case." *United States v. Martin*, 75 M.J. 321, 324 (C.A.A.F. 2016) (internal quotations and citation omitted).

Finally, the Court notes that "the denial of a motion to continue" is reviewed for "an abuse of discretion." *United States v. Cervantes*, 4 F.4th 1089, 1093 (10th Cir. 2021). The Tenth Circuit has stated time and again that trial judges are granted "broad discretion on matters of continuances." *United States v. Hughes*, 191 F.3d 1317, 1324 n.3 (10th Cir. 1999); *United States v. Flanders*, 491 F.3d 1197, 1216 (10th Cir. 2007); *United States v. Barnes*, 620 F. App'x 668, 670 (10th Cir. 2015) (unpublished). And, although only persuasive authority, some courts of appeals apply an even more deferential standard when a trial judge is ruling on a last-minute continuance. *See, e.g., United States v. Gottesfeld*, 18 F.4th 1, 13 (1st Cir. 2021) (according "extraordinary deference" to a district court's ruling on a "last-minute continuance"); *United States v. Vasquez*, 560 F.3d 461, 467 (6th Cir. 2009) ("the trial judge's actions are entitled to extraordinary deference" when granting a defendant's request would "necessitate a last-minute continuance"); *cf. United States v. Sheperd*, 27 F.4th 1075, 1087 (5th Cir. 2022) (explaining, categorically, that "district courts do not abuse their discretion when denying 'eleventh hour' motions for continuances").

Repeated last-minute motions to continue undermine the Court's interest in the orderly administration of justice. *See United States v. Pena*, 279 F. App'x 702, 709 (10th Cir. 2008) (unpublished). Such motions should only be granted when a party provides a "compelling reason[]" for the continuance. *Morris v. Slappy*, 461 U.S. 1, 11 (1983). In light of: (1) the two years of representation by the same defense counsel, (2) the eight months Dr. Lundy had to obtain and review the medical records, and (3) the previous six continuances, the Court finds Defendant Bauer has failed to provide a compelling reason for granting his motion to reconsider his motion to continue.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant Bauer's Motion for Reconsideration (**Doc. 93**) is **DENIED in part**. Counts 1, 2, and 4 will go to trial, as scheduled, on **March 31, 2025, at 9:00 a.m.**

**IT IS FURTHER ORDERED** that the Court **RESERVES RULING** on whether to continue the trial as to Count 3 (and only Count 3)—by way of a *sua sponte* severance—pending Dr. Lundy's testimony at the *Daubert* hearing on March 25, 2025. As stated previously, if Dr. Lundy's report is complete then the *Daubert* hearing will proceed in the normal course. If her report is not complete, then the Court will inquire about: (1) how much longer she needs; (2) what efforts she undertook since July 2024 (*see* **Doc. 31**) to gather and review Defendant Bauer's medical records; (3) what medical records she thought were pertinent and why; (4) when she first learned of the existence of the Presbyterian Hospital medical records; and (5) what actions she's taken since the continuance in January.

**IT IS SO ORDERED**.

/s/
_____
WILLIAM P. JOHNSON
SENIOR UNITED STATES DISTRICT JUDGE